DYER, PETICIONARIO, *v.* ROSSY, JUEZ DE DISTRITO, DEMANDADO.

*Mandamus* para que se ordene al Juez de Distrito de San Juan, Sección 2ª., el sobreseimiento de un caso.

No. 154.—Resuelto en mayo 2, 1916.

MANDAMUS—CONTESTACIÓN DEL DEMANDADO—MOCIÓN DE DESESTIMACIÓN—EXCEPCIÓN PREVIA.—Cuando el demandado en un recurso de *mandamus* en vez de contestar el auto conforme con lo que dispone la sección 10 de la ley presenta moción para que se desestime la solicitud con el solo objeto de combatir los fundamentos expuestos para que se expida el auto, sin alegar materia alguna que niegue los hechos de la petición, éstos se consideran como admitidos en la misma forma que si se tratara de una excepción previa.

ID.—FIANZA—JUICIO RÁPIDO—DERECHOS DEL ACUSADO—SOBRESEIMIENTO.—El auto de *mandamus* es el remedio que puede utilizar un acusado cuando, hallándose bajo fianza, no puede obtener un juicio rápido de su causa. Procede para que se decrete el sobreseimiento de la acusación por ese motivo.

SOBRESEIMIENTO—JUSTA CAUSA—JUICIO—DISCRECIÓN JUDICIAL—EXTENSIÓN DE LA FACULTAD DE REVISIÓN.—De acuerdo con el artículo 448, número 2, del Código de Enjuiciamiento Criminal, cuando no se demuestra justa causa para la no celebración del juicio dentro de los 120 días, la corte carece en absoluto de discreción y está obligada perentoriamente a decretar el sobreseimiento de la acusación. Por eso una corte de revisión tiene derecho a examinar los autos y resolver si se ha alegado justa causa, y si no hay conflicto en la prueba fallar como hubiera debido resolver la corte inferior.

Id.—Suspensión del Juicio—Derechos del Acusado—Discreción Judicial.— Si dentro de los 120 días la corte suspende un caso hasta una fecha que está aún comprendida en ellos, no surge cuestión alguna acerca del derecho del acusado a que la causa sea sobreseída, pues dentro de ese término la discreción es absoluta.

Id. — Juicio Rápido — Suspensión del Juicio — Discreción Judicial — Justa Causa.—Cuando un acusado presenta moción para que su causa sea sobreseída por no haber sido juzgado dentro de los 120 días que señala el artículo 448 del Código de Enjuiciamiento Criminal, es el deber de la corte no tomar en consideración si tenía o no discreción para ordenar la suspensión, sino ver si el juicio ha sido demorado por más de 120 días sin causa razonable y sin la conformidad del acusado; esto es, determinar si El Pueblo ha alegado motivos justificados para la demora.

Suspensión del Juicio—Affidavit—Interpretación Estricta—Conclusiones de Ley—Información y Creencia—Conocimiento Propio.—Las manifestaciones contenidas en el *affidavit* de un Fiscal para obtener la suspensión de la vista de una causa deben ser interpretadas estrictamente, debiendo expresar en él hechos precisos y no meras generalidades o conclusiones de ley. En el *affidavit* debe alegarse además qué parte del mismo se hace por información y creencia, y cuál de propio conocimiento.

Id.—Acometimiento y Agresión—Justa Causa.—Las manifestaciones hechas en un *affidavit* para obtener la suspensión de la vista de un caso por acometimiento y agresión, de que cierto testigo, un juez de paz, que se encontraba ausente, declararía de que el acusado cuando vino a su presencia estaba embriagado y excitado, y que él dijo que iba a hacer armas con un revólver contra la denunciante si ella no hubiera salido de la casa, no constituyen causa razonable para la demora del juicio, pues ellas no establecen lógicamente un acometimiento y agresión por el acusado.

Id.—Falta de Testigos—Requisitos Esenciales—Negligencia.—Conforme al artículo 202 del Código de Enjuiciamiento Civil, tres son los requisitos esenciales que deben establecerse para suspender un juicio por la falta de un testigo: 1°. que el testigo sea realmente esencial, y de que así parezca a la corte; 2°. que la parte que hace la solicitud no sea culpable de negligencia; y 3°. que pueda conseguirse al testigo en la fecha para la cual se suspende el juicio y como parte de la esencialidad que no puede obtenerse otro de igual clase.

Testigos—Credibilidad de los Testigos—Manifestaciones Sobre Eventualidades.—El hecho de que un acusado al ser llevado ante el juez de paz esté excitado y embriagado y que haga manifestaciones respecto a lo que hubiera hecho en cierta eventualidad, no afecta a su credibilidad como testigo.

Mandamus—Discreción Judicial—Abuso de Discreción.—El auto de *mandamus* no debe ser usado para regular la discreción judicial, pero sí puede expedirse para regular actos judiciales cuando no surge ninguna discreción o se abusa de ella.

Los hechos están expresados en la opinión.

Abogado del peticionario: *Sr. J. Henri Brown.*

Abogado del demandado: *Sr. Salvador Mestre, Fiscal.*

El Juez Asociado Sr. Wolf, emitió la opinión del tribunal.

F. E. Dyer, contra quien está pendiente un proceso criminal, ha presentado una solicitud a este tribunal interesando la expedición de un auto de *mandamus* por el que se ordene a la Corte de Distrito de San Juan, Sección 2ª., que sobresea dicha causa.

Proveyendo a la solicitud de auto de *mandamus* fué dictada por este tribunal una resolución ordenando a la Corte de Distrito de San Juan, o al juez de la misma, que exprese las causas, dentro del término de diez días, por las cuales no deba expedirse el auto perentorio de *mandamus*. En contestación a esta orden el demandado ha presentado una moción para que se desestime la petición en la que se alegan varios fundamentos. Nuestra ley de *mandamus* dispone en su sección décima, que no se admitirá ninguna otra defensa o alegación escrita sino el auto y la contestación. De acuerdo con la sección 9 de dicha ley, si no se diere contestación alguna, se expedirá un auto de *mandamus* perentorio en contra del demandado, suponiendo siempre que el acto particular que se trata de hacer cumplir por el peticionario puede obtenerse mediante el auto de *mandamus*. La moción que ha sido presentada en este caso, o es una contestación o no es nada. Sólo tiene por objeto combatir los fundamentos que han sido alegados para que se expida el *mandamus*. De todos modos, los hechos de la solicitud tienen que ser considerados como admitidos como en cualquier caso de excepción previa. Las autoridades se pronuncian en este sentido cuando la alegación que se presenta no contiene materia alguna que niegue los hechos de la petición. Véase especialmente en cuanto a *mandamus* los casos de *Beadles* v. *Fry,* 2 L. R. A. (N. S.) 855 y *Thompson* v. *State,* 154 Pac. 503.

La petición presentada en este caso alega que el peticionario fué acusado y juzgado en la Corte Municipal de Bayamón a virtud de una denuncia por acometimiento y agresión con circunstancias agravantes, siendo las siguientes las alegaciones esenciales de dicha denuncia:

Que en 2 de junio, 1915, a las 7 a. m. y en el barrio de

Candelaria de Toa Baja, Puerto Rico, dentro del distrito judicial municipal de Bayamón, Puerto Rico, el citado F. E. Dyer, voluntaria y maliciosamente y con la intención criminal de causar grave daño corporal a Martha A. Caull, la acometió y agredió con los puños, produciéndole varios golpes en un hombro y en la espalda; que las circunstancias agravantes en este caso consistían en que el agresor era un varón adulto y fuerte y la agredida una mujer.

La Corte Municipal de Bayamón celebró el juicio de la causa y dictó sentencia en 17 de julio de 1915, declarando al peticionario culpable del delito de acometimiento y agresión con circunstancias agravantes y le impuso una multa de cien dólares y costas, con prisión alternativa. El peticionario interpuso apelación contra esta sentencia y los autos y todos los documentos relacionados con dicha causa fueron elevados a la Corte de Distrito de San Juan y archivados en ella el día 27 de julio, 1915; que el juicio en la corte de distrito fué señalado para el día 7 de octubre de 1915, en cuya fecha compareció el peticionario con su abogado y sus testigos, anunciándose listo para juicio y solicitando de la corte que el juicio se celebrase; que el Hon. Salvador Mestre quien había sido designado especialmente por la oficina del Attorney General de Puerto Rico para actuar en la causa y quien, en todas las fechas y ocasiones mencionadas en la solicitud, ha llevado la representación de El Pueblo de Puerto Rico, por moción oral solicitó de la corte la suspensión del juicio, y la corte contra la oposición del peticionario y sin motivo fundado o causa legal (como fué alegado en la solicitud), declaró con lugar la moción del Fiscal y el juicio fué suspendido y transferido hasta nuevo señalamiento.

Que el juicio de la dicha causa fué señalado por segunda vez para el día 21 de diciembre de 1915, en cuya fecha compareció el peticionario con su abogado y testigos, anunciándose listo para el juicio. El abogado del Gobierno entonces presentó una moción escrita solicitando la suspensión y transferencia del juicio, moción que fué concedida por la

corte contra la oposición del peticionario sin causa como se alega en la solicitud, para la suspensión, y sin que existiera causa fundada para ello. En la misma fecha mediante moción oral, el peticionario solicitó de dicha corte de distrito el sobreseimiento de la causa, fundando su moción en el artículo 448 del Código de Enjuiciamiento Criminal en relación con el 11 del propio código, por haber transcurrido más de ciento veinte días desde que la dicha causa fué iniciada en dicha corte sin haberse celebrado el juicio, pero la corte, sin causa legal, denegó la moción del peticionario.

El juicio de dicha causa fué señalado por tercera vez para el día 23 de febrero de 1916, en cuya fecha compareció vuestro peticionario con su abogado y sus testigos. En esa fecha presentó el Fiscal una moción escrita y *affidavit* en la que se alegaba en sustancia que uno de los testigos más importantes de El Pueblo era Pablo Lavandero, Juez de Paz de Bayamón, en la época en que ocurrieron los hechos denunciados; que dicho Lavandero se encontraba ausente en España por una corta temporada y debía regresar a Puerto Rico en breve término; que la declaración del referido Lavandero no era acumulativa y declararía más o menos en los siguientes términos:

"Que en la mañana de autos, por requerimiento de la Señora Martha Caull, extendió la denuncia contra el Sr. Dyer; que el acusado Dyer fué traído a su presencia y que estaba algo ebrio a tal extremo, que se encontraba muy excitado, y en actitud colérica, teniendo (el juez de paz) que manifestarle que si no se moderaba habría de ser reducido a prisión; que dicho Dyer le manifestó que había echado de su casa a la Señora Caull y que si se hubiera resistido hubiera hecho armas contra ella con un revólver que tenía."

Que esa declaración era esencial sin que otro testigo pudiera declarar sobre estos particulares; que dicho Lavandero fué testigo en la corte municipal y si no había sido citado para este juicio anteriormente fué porque a la fecha que se hizo el señalamiento del juicio el testigo se encontraba ya ausente en España; que esta solicitud se hizo de buena

fe y no tenía por objeto la dilación del caso; que existía una buena y suficiente causa de acción contra el acusado; que en mérito de las razones expuestas el Fiscal solicitaba la suspensión de la causa hasta nuevo señalamiento dentro de las conveniencias de la corte. En el juramento se dice meramente que fué jurado y suscrito por Salvador Mestre, Fiscal del Tribunal Supremo y certificado por el secretario de la corte de distrito.

Que la corte de distrito, continúa expresando la petición, contra la oposición del peticionario y sin causa legal o motivo fundado y excediéndose en el uso de sus facultades discrecionales, ordenó la suspensión del juicio hasta nuevo señalamiento; que en la misma fecha, febrero 23, 1916, el peticionario presentó una moción jurada por escrito alegando que habían trascurrido más de ciento veinte días después de iniciarse el proceso sin haberse celebrado el juicio; que el juicio de dicha causa no había sido suspendido ni transferido a petición o con el consentimiento del peticionario, y fundándose en las prescripciones del artículo 448 del Código de Enjuiciamiento Criminal solicitó de la corte el sobreseimiento de la causa; y la corte, en exceso de su discreción, declaró sin lugar dicha moción; que el peticionario en todas las ocasiones mencionadas ha insistido siempre en que se celebrase un juicio rápido de dicha causa.

La duda principal que ha tenido este tribunal ha sido sobre la cuestión de si procedería el auto de *mandamus,* puesto que se alega que la suspensión de un juicio es una cuestión que está dentro de la discreción de la corte, y que el *mandamus* no es el remedio adecuado para regular la discreción judicial. La sección 2 de la Ley·de *Mandamus* dispone que aun cuando el auto puede requerir a un tribunal inferior, o a un juez del mismo, para que ejecute un acto determinado, o proceda al desempeño de cualquiera de sus funciones, el auto no puede tener dominio sobre la discreción judicial.

En California, donde existe un estatuto semejante al artículo 448 del Código de Enjuiciamiento Criminal, la corte

originalmente resolvió que el auto de *mandamus* no procedía. *Strong* v. *Grant,* 99 Cal. 100. En ese caso el Juez Presidente Sr. Beatty estuvo conforme y emitió una extensa opinión concurrente en la que hacía referencia a la injusticia de no concederse a un hombre que no podía obtener un juicio rápido, el recurso de *habeas corpus* o de *mandamus.* Estuvo conforme, porque creyó que los hechos en particular no justificaban la expedición de uno u otro auto. Las cortes de California han resuelto uniformemente que cuando un prisionero se encontraba en libertad bajo fianza él mismo no podía entregarse con el objeto de poner a prueba mediante *habeas corpus* el derecho que tenía el Estado a proceder contra él. La teoría era la de que como el acusado estaba en libertad no podía invocar el auto de *habeas corpus* para que se le restituyera la libertad que voluntariamente había renunciado.

Subsiguientemente en *Ex parte Ford,* 169 Cal. 334, 116 Pac. 757, en que fué presentada una solicitud para un auto de *habeas corpus* por falta de un juicio rápido, la Corte Suprema de California negó la solicitud en que se interesaba dicho auto, evidentemente basada en la teoría de que no procedía el auto de *habeas corpus* cuando el peticionario se entregaba voluntariamente, pero resolvió que el auto de *mandamus* era procedente, analizando y revocando el caso de *Strong* v. *Grant, supra.* La Corte Suprema de California resolvió en aquel caso, aprobando el razonamiento del Juez Presidente Sr. Beatty, que el *mandamus* era el único remedio que podía utilizarse cuando se negaba al acusado un juicio rápido; en otras palabras, en el caso de *Ex parte Ford,* aunque se niega el *habeas corpus,* se resolvió, después de una detenida consideración, que el *mandamus* era el remedio adecuado para regular determinados actos judiciales en los cuales el deber era claro o estaba envuelto un verdadero derecho del acusado, como sucede en el presente caso. El peticionario Ford, después de la decisión del caso anterior, presentó una solicitud para que se expidiera un *mandamus*

la cual fué denegada por la corte inferior por virtud de los hechos, pero la Corte de Distrito de Apelaciones en la apelación revocó la sentencia de la corte inferior y el prisionero fué puesto en libertad. *Ford* v. *Superior Court,* 118 Pac. 86. Subsiguientemente en el caso de *Hosburgh* v. *Murasky,* 169 Cal. 50, la Corte Suprema de California aprobó la doctrina establecida en el caso de *Ex parte Ford,* manifestando que procederá el *mandamus* para restablecer una apelación que ha sido desestimada erróneamente o para que se conceda una moción de sobreseimiento de una acusación por virtud de la cual debió haber procedido la corte inferior.

En Oklahoma el mismo principio ha sido siempre aplicado. *State ex rel Sims* v. *Caruthers,* 98 Pac. 474, *State* v. *Cole,* 109 Pac. 736, *McLeod* v. *Graham, Judge,* 118 Pac. 160. En el caso citado últimamente se cita el de *Ex parte Ford* y vuelve a citarse el razonamiento del Juez Presidente Sr. Beatty en el caso de *Strong* v. *Grant.* Creemos conveniente reproducir estas consideraciones puesto que las mismas regularon en gran parte el caso de *Ex parte Ford.*

"Una persona acusada de un delito tiene derecho a un juicio rápido para que si es inocente pueda quedar en libertad. Retenerla bajo custodia, u obligarla mediante fijación de fianza a hacer plantón ante una corte mientras su juicio se suspende arbitrariamente sin su consentimiento no sólo es un daño y una injusticia para tal persona, sino un detrimento al público. El objeto del estatuto, citado en la opinión de la corte (*Strong* v. *Grant*), es evitar esos males. Sin embargo, el efecto de dicha opinión, en unión de otras decisiones en casos análogos, es privar al estatuto del efecto para el cual fué creado, al menos en lo que respecta a su cumplimiento por esta corte, y darle un uso completamente extraño y contrario a su intención. En efecto, ha sido resuelto que, sin que importe cuan injustificadamente el derecho concedido por el estatuto haya sido desatendido por la corte superior, la persona agraviada no tiene remedio alguno, excepto el de apelación a esta corte; y éste claramente no es tal remedio para un hombre inocente cuyo juicio ha sido irrazonablemente pospuesto, pues al ser absuelto no tiene de qué apelar. Las únicas personas que pueden apelar son aquellas que han sido declaradas culpables, y si sus condenas son de algún otro modo

ilegal, no tienen oportunidad de recurrir a este estatuto para su liheración. Por tanto, la única persona que puede obtener sus beneficios por la intervención de esta corte, es aquella convicta por sentencia que en todos sus demás particulares sea correcta o en otras palabras, aquella que realmente es culpable del delito que se le imputa. *People* v. *Morino,* 85 Cal. 515, 24 Pac. 892. Puede decirse sin temor a equivocación que la Legislatura nunca hubiera pasado tal ley si ese fuera el único caso en que pudiera hacérsele cumplir. La verdad es que la ley fué decretada como todas aquellas disposiciones análogas relativas al procedimiento criminal para beneficio del inocente, y no con el objeto de abrigar al culpable. Y esto es verdad no sólo en cuanto a esta regla, sino en cuanto a todas aquellas de procedimiento, necesarias para la protección de hombres inocentes injustamente acusados. También los culpables, como se presumen inocentes mientras no se demuestre su culpabilidad, pueden aprovecharse de ellas; pero sería un resultado muy extraordinario que por la voluntaria y deliberada infracción de esa regla, un hombre inocente no tuviera remedio alguno, mientras que uno debidamente convicto de un delito pudiera por virtud de la misma, evadir el castigo. Me parece que debe haber un error en alguna parte de las resoluciones que conducen a tal resultado, y creo que el error consiste en sostener que la parte agraviada no puede recurrir a un *mandamus,* como se sostiene en esta opinión, o en declarar que no puede recurrir al *habeas corpus,* como fué resuelto en un procedimiento anterior entablado por este mismo peticionario (diciembre 12, 1892). Si un hombre inocente que está encarcelado mes tras mes mientras su juicio se suspende arbitrariamente, no puede recurrir a esta corte en solicitud de un remedio, ya mediante *habeas corpus,* o *mandamus,* no sé qué otro remedio pueda tener. La apelación, como ya hemos dicho, no es un remedio, pues él no puede apelar hasta después del juicio, y la negativa a ser traído a juicio es precisamente el perjuicio de que se queja; y además, siendo inocente, es de presumirse que será absuelto, de traérsele algún día a juicio, y que entonces no tendrá de qué apelar. No puedo llegar a admitir que no exista un remedio adecuado para tal perjuicio y por consiguiente estoy convencido de que procede el *habeas corpus* o el *mandamus.*"

Y en *Ex parte Ford* la corte dice además:

"En nuestra opinión los verdaderos medios de prueba son si la ley tiene por objeto que su resolución sea definitiva; y si no lo es, si existe algún otro remedio claro, rápido y adecuado. Si la reso-

lución del tribunal tenía por objeto ser definitiva, es evidente que no puede ser modificada bien mediante *mandamus* o de algún otro modo. Si el objeto no era que fuera definitiva, pero existe otro remedio 'claro, rápido y adecuado,' el auto no puede ser expedido; pues no fué su intención la de usurpar el lugar de otros remedios. Pero si la resolución no tenía por objeto ser definitiva y no existe otro remedio adecuado, debe expedirse el auto. De otro modo habría un reconocido perjuicio sin remedio alguno. El auto se expide en tal caso para evitar un fracaso de la justicia. Y este es su antiguo oficio. Según dice Lord Mansfield 'fué introducido para evitar desorden debido a un fracaso de la justicia y defecto del poder gubernativo (*defect of police*). Por tanto, debe ser utilizado en todas las ocasiones en que la ley no ha establecido un remedio específico y cuando de acuerdo con la justicia y buen gobierno debe existir uno.' Se citan casos.

"No tiene finalidad una orden por la que se niega el sobreseimiento de una acusación en que la moción se funda en la razón de que el juicio de un acusado ha sido suspendido ilegalmente fuera del término prescrito. Puede ser revisada en apelación si luego el acusado es traído a juicio y declarado culpable. No existe, sin embargo, apelación directamente contra la orden negando el sobreseimiento, y el derecho de apelación después de la condena no proporciona ningún remedio adecuado, puesto que el acusado puede no ser jamás llevado a juicio. En tales circunstancias si una persona que está en libertad bajo fianza no tiene un remedio mediante *mandamus* para corregir un claro abuso de discreción por parte de la corte al negarse arbitrariamente a sobreseer la acusación presentada contra él cuando no ha sido traído a juicio dentro del término especificado, la garantía constitucional y el mandato estatutorio son en lo que a él respecta de ningún valor." 116 Pac. 762.

Ahora bien, aunque no queremos que se entienda que estamos de acuerdo con las cortes de California al declarar que un acusado no debe entregarse e invocar el auto de *habeas corpus,* creemos, sin embargo, que ningún hombre está obligado a renunciar su libertad, y si está en libertad bajo fianza su único verdadero remedio es el *mandamus.*

El artículo 448 del Código de Enjuiciamiento Criminal prescribe lo siguiente:

"A menos que exista justa causa contraria, el tribunal decretará el sobreseimiento del proceso en los casos siguientes:

"1. Cuando una persona haya sido detenida para responder por la comisión de un delito público, siempre que no se haya presentado acusación contra ella en el término de sesenta días desde su detención.

"2. Cuando un acusado, cuyo juicio no haya sido transferido a petición suya, no sea sometido a juicio en el término de ciento veinte días a contar desde la presentación de la acusación."

De acuerdo con este artículo cuando no se demuestra justa causa, la corte está obligada perentoriamente a sobreseer la causa. Si no se demuestra justa causa creemos que la corte carece absolutamente de discreción. El derecho que tiene un hombre acusado de un delito a la celebración del juicio dentro del término de ciento veinte días y el deber de la corte de sobreseer la causa a falta de tal juicio rápido son coextensivos. Cuando nada se demuestra la corte no tiene discreción para negarse a sobreseer la causa. Por tanto, creemos en primer lugar que una corte de revisión tiene derecho a examinar el estado de los autos para ver si el Gobierno alegó alguna causa justa. En *Ex parte Ford* se llamó la atención hacia el hecho de que si la solicitud envuelve la cuestión del peso de la prueba o del ejercicio de una verdadera discreción, no procederá el auto de *mandamus;* pero convenimos con el peticionario en que en este caso no había nada que envolviera el ejercicio de discreción judicial, porque creemos que la moción del Fiscal carecía enteramente de los elementos esenciales de una moción válida para obtener una suspensión. Ordinariamente cuando se dice, como se ha dicho frecuentemente, que la cuestión relativa a la suspensión de un juicio descansa en la sana discreción de la corte, no ha estado envuelta ninguna cuestión de un derecho estatutorio particular a un juicio rápido. Ninguno de los derechos que tiene un acusado a un juicio rápido estaban envueltos en la inmensa mayoría de las decisiones, en las que se decía que la suspensión de un juicio descansa en la discreción de la corte. Por ejemplo, si dentro de los ciento veinte días

la corte suspende un caso hasta una fecha que está todavía comprendida en los ciento veinte días, no puede surgir cuestión alguna acerca del derecho del acusado a que la causa sea sobreseída de acuerdo con el artículo 448 del Código de Enjuiciamiento Criminal; dentro de ese término la discreción es prácticamente absoluta. Si se hace una solicitud fuera de ese término, la corte, como hemos dicho, a no ser que se alegue alguna razón, carece de discreción. Puede decirse que la corte siempre tiene discreción para suspender un caso, en tanto se trata de la mera cuestión de suspensión, independientemente de algún derecho adquirido por el acusado. Sin embargo, cuando el acusado como lo hizo en la corte inferior, presente una moción para que la causa sea sobreseída por no haber sido juzgada dentro de los ciento veinte días, es el deber de la corte no tomar en consideración si tenía o no discreción para ordenar la suspensión, sino ver si el juicio había sido demorado por más de ciento veinte días sin causa razonable y sin la conformidad del acusado. En otras palabras, era el deber de la corte sentenciadora en este caso ver si había sido alegado algún motivo justificado para la suspensión de la causa por espacio de tanto tiempo. La cuestión era si el Fiscal en este caso concreto había alegado motivos justificados para la demora. El mero hecho de que la corte había suspendido el caso a instancia del Fiscal en varias ocasiones no era una razón suficiente. La corte sentenciadora debió haber examinado los hechos y cerciorádose de si la suspensión por ciento veinte días o más se hizo con justa causa. Y donde no haya habido disputa en cuanto a los hechos la corte de revisión tiene el mismo derecho.

También se ha resuelto que el deber de mostrar justa causa se hace todavía más necesario después de cada suspensión sucesiva. Cuando el peticionario en este caso presentó una moción para el sobreseimiento de la causa ya el caso había sido suspendido dos veces, a pesar de su oposición y como él afirma, sin justa causa. Ahora bien, aun-

que su alegación de que las anteriores suspensiones se hicieron sin justa causa puede ser una mera conclusión legal, creemos, de acuerdo con las autoridades, que el peso de la prueba lo tenía el Gobierno para establecer de algún modo que las anteriores suspensiones se hicieron con justa causa.

Deben expresarse hechos precisos y no meras generalidades o conclusiones de ley; y en vista de la presunción de que el promovente trataría de probar su caso en la mejor forma posible y haría mención de todo aquello que tienda a obtener la suspensión, las manifestaciones contenidas en el *affidavit* serán interpretadas lo más estrictamente posible en su contra. 6 R. C. L. 562 y autoridades citadas en la nota. El acusado estuvo allí presente cada vez que el juicio había sido señalado insistiendo en la celebración del mismo. Creemos que el Gobierno no ha demostrado nada en absoluto, excepto en lo que respecta a la última suspensión, y como hemos visto, los hechos de la petición no han sido controvertidos. Examinaremos, sin embargo, la última suspensión bajo la teoría de que las anteriores suspensiones se hicieron con alguna justificación legal. Sin embargo, por razón de estas anteriores suspensiones la solicitud presentada por el Fiscal en este caso para obtener una nueva suspensión estaba sujeta a un severo análisis al ser presentada la moción de sobreseimiento.

Creemos que la mera inspección del *affidavit* y moción presentados por el Fiscal demuestran que los hechos sobre los cuales había de declarar Lavandero eran sumamente remotos en vista de los hechos alegados en la acusación. Nos parece que las manifestaciones hechas por el acusado ante el juez de paz no tienen prácticamente fuerza probatoria o lógica al tratar de establecer un acometimiento con los puños por el referido Dyer, en el barrio Candelaria. Lo más que puede decirse del *affidavit* es que el acusado estaba embriagado y excitado ante el juez de paz y que dijo que iba a hacer armas con un revólver contra la Sra. Caull si se hubiera resistido a su tentativa de ponerla fuera de su casa. Según

aparece de su faz no creemos que alegaba una causa razonable para la demora del juicio. Se ha indicado que en solicitudes de esta clase no es sólo el derecho del peticionario a obtener su libertad la cuestión envuelta, sino a estar libre en la comunidad del cargo que sobre él pende. Porque un juez de paz que está ausente pudiera ofrecer prueba tendente a demostrar que en el día en que los sucesos tuvieron lugar estaba el acusado ebrio y excitado y dijera que hubiera en ciertas condiciones empleado violencia en la persona de la Sra. Caull, esto no tiende a establecer el hecho de que el acusado realmente empleó dicha violencia. Por el contrario, la deducción más razonable que de la misma se desprende es que el acusado negaba el acto de violencia y solamente hablaba de lo que hubiera hecho en alguna ocasión que no se determina si la Sra. Caull se hubiera negado a salir de la casa. Una eventualidad sobre otra eventualidad.

Pero analizando el *affidavit* de acuerdo con los principios establecidos por las cortes, creemos que los hechos que en el mismo se refieren eran dudosamente pertinentes y que jamás fué demostrada su esencialidad (*materiality*). En una moción para obtener una suspensión debe siempre establecerse la esencialidad (*materiality*) de las alegaciones.

En el caso de *Ford* v. *Superior Court,* 118 Pac. 99, *supra,* se establecen las reglas para una moción sobre suspensión, como sigue: "Tres cosas son necesarias para suspender un juicio: Primero, que el testigo sea realmente esencial (*material*) y así parece a la corte; segundo, que la parte que hace la solicitud no haya sido culpable de negligencia; y tercero, que pueda conseguirse al testigo en la fecha para la cual ha sido suspendido el juicio." En otras palabras, deberá probarse la esencialidad (*materiality*). 6 R. C. L. 556, 74 Am. Dec. 147.

Nuestro propio Código de Enjuiciamiento Civil expresa la ley.

"Artículo 202.—Una moción para transferir un juicio por falta de prueba, sólo puede hacerse mediante declaración escrita y jurada

demostrando la importancia esencial (*materiality*) de la prueba con que se cuenta, y que se ha practicado la debida diligencia para obtenerla. La corte podrá también exigir al solicitante que exprese mediante declaración escrita y jurada, las pruebas que espera conseguir * * *."

*El Pueblo* v. *Gallart,* 11 D. P. R. 377; *El Pueblo* v. *Román,* 18 D. P. R. 219, son dos casos criminales que también muestran los requisitos de una moción sobre suspensión de la causa.

Alega la denuncia que el acusado agredió con los puños en el barrio de Candelaria a la Sra. Caull. El *affidavit* tiende a demostrar que en el caso de su negativa a salir de su casa él hubiera usado un revólver contra ella. Las dos cosas que se describen, la pretendida agresión y la verdadera agresión, son enteramente distintas. Creemos que era necesario para el Gobierno demostrar la relación lógica que existe entre los dos hechos. Si fuera sugerido que en un conflicto de prueba entre los dos partícipes principales la prueba tendía a demostrar que el acusado estaba encolerizado y ebrio aunque la prueba sea remotamente pertinente, todavía no se ha demostrado que es esencial (*material*). Las supuestas manifestaciones del acusado, como hemos visto, no admitían la violencia. Tendían a negarla. Ni en el *affidavit* ni en la denuncia se dice que la casa del peticionario está situada en Candelaria. No hay nada que demuestre que tuvo lugar un verdadero acometimiento en la casa del peticionario. Se le hizo decir que si la Sra. Caull no hubiera salido de la casa del peticionario él hubiera empleado violencia contra ella, pero no se acredita que estaba haciendo alusión al *res gestæ* de la supuesta agresión. El peticionario, a quien se presenta como que estaba ebrio y encolerizado podría haber estado haciendo referencia a cualquier suceso anterior ocurrido recientemente, o de mucho tiempo. Debe agregarse de paso, que si en la fecha de la supuesta violencia la embriaguez era un hecho esencial, no puede presumirse porque estuviera ebrio el peticionario cuando fué traído ante el juez de paz,

que lo estuviera también al tener lugar la supuesta agresión. No se ha probado el tiempo que había transcurrido y el peticionario pudo haberse embriagado después.

Pero si se considera que la manifestación del peticionario citado en el *affidavit* se refiere a sucesos que tuvieron lugar en la casa del acusado y a la denuncia, ellos todavía no tienden necesariamente a probar un ataque criminal puesto que una persona en su casa tiene el derecho de emplear la fuerza que sea razonable para sacar a una persona que se niega a salir cuando así se le ordena legalmente. En tales circunstancias aun cuando el *affidavit* tienda a demostrar cierto estado de ánimo por parte del peticionario, la actitud que se le imputa tiene poca fuerza al tratar de probarse el *mens rea* (intento criminal) con respecto al delito que se describe en la denuncia.

Algunas de las manifestaciones hechas en el *affidavit* como ha sido presentado parecen ser improbables. Uno de los requisitos de un *affidavit* sobre suspensión de un juicio es que la prueba que trata de presentarse no solamente es esencial sino que no pudo obtenerse prueba de igual clase. El *affidavit* expresa que el acusado fué llevado a presencia del magistrado, ebrio y excitado. Si fué llevado allí, debió haberlo sido por alguna otra persona. No existe nada que indique que el acusado estaba solo con el juez de paz en el momento en que se hizo la declaración. Por el contrario lo que debe entenderse del *affidavit* es que había sido arrestado y traído a presencia del juez de paz, y si fué llevado allí, debió haber sido por una o más personas. Se representa al peticionario como que estaba tan indisciplinado que el juez de paz tuvo que llamarle al orden y, por tanto, parece ser la cosa más improbable que fuera el juez de paz la única persona que oyera las palabras del acusado. Y en cuanto a este estado de embriaguez si era un hecho que hacía referencia al momento del supuesto acometimiento, alguna otra persona debió haber estado en condiciones de poder declarar acerca de este estado aun cuando haya de suponerse que

la perjudicada no podía. Puede ser cierto, como expresa
el *affidavit,* que el Sr. Lavandero es la única persona que
puede declarar acerca de estos hechos, pero su manifesta-
ción no está corroborada por el resto del *affidavit,* todo lo
cual entra a formar parte de la consideración de si este *affi-
davit* constituía causa razonable para la negativa a sobre-
seer la causa.

Existe, sin embargo, otra razón y ésta es la forma del
*affidavit.* No se ha demostrado de qué parte adquirió el
Fiscal estos hechos respecto a los cuales dice que el Sr. Lavan-
dero declarará. El *affidavit* no muestra qué parte del mismo
se hace por información y creencia y lo que el Fiscal sabía
de propio conocimiento. Esto pudiera llegar a tener impor-
tancia si en realidad de verdad el testigo en particular no
era el único que podía declarar sobre los hechos.

No es una cuestión muy importante para el caso en vista
de las demás consideraciones, pero creemos que la moción
para obtener la suspensión dejó de mostrar diligencia, puesto
que el testigo en particular que se necesitaba era y es de
presumirse que sea un juez de paz y un funcionario del Go-
bierno, que generalmente no se ausenta sin el consentimiento
de su jefe administrativo. No se trató de hacer que per-
maneciera aquí para el juicio o de conseguir que regresara
pronto.

El caso de *Ex parte Ford,* se basó en gran parte en la
teoría de un abuso de discreción por una corte inferior y
se ha resuelto generalmente que el *mandamus* es procedente
cuando existe tal abuso. *Inglin et al.* v. *Hoppin et al.,* es
un caso muy interesante en lo que respecta al particular. 156
Cal. 483, 105 Pac. 582. Nota 122 A. S. R. 746. Véase tam-
bién la nota a 122 A. S. R.; 26 Cyc. 190.

Creemos que si alguna duda pudiera surgir respecto a
la esencialidad (*materiality*) de los hechos que se pretenden
probar, el negarse a sobreseer la causa constituyó un abuso
de discreción. Sin tomar en consideración las varias sus-
pensiones, el *affidavit* se refería a cuestiones de tan poca

importancia que si la condena dependía de este eslabón en el supuesto encadenamiento de la prueba, circunstancial o de otra clase, no valía la pena de seguir con el proceso del caso. Si se alegara que esta declaración era necesaria para resolver un conflicto en las declaraciones de dos personas aparentemente de igual veracidad, entonces después de presentarse tal pretendida declaración cualquier jurado o cualquier juez debe todavía tener una duda razonable. El hecho de que el acusado hay podido estar indisciplinado o embriagado ante el juez de paz y las vagas referencias respecto a lo que hubiera hecho en cierta eventualidad, no tenía nada que ver con su credibilidad como testigo.

Ahora bien, ya pueda decirse que hubo abuso de discreción o que se diga que jamás llegó el momento de ejercitar dicha discreción a cuya última opinión nos inclinamos, muy poco importa para el caso. El auto no debe ser usado para regular la discreción judicial pero los actos judiciales pueden ser regulados cuando no surge ninguna discreción o se abusa de la misma. En este último caso las cortes no pretenden regular la discreción. Ellas corrigen el abuso. El hecho de que tenga la corte que determinar si un hecho o condición de hechos existe para el ejercicio de un claro deber no convierte al acto que ha de ejecutarse en un acto discrecional. 26 Cyc. 161, nota 10.

Creemos que el Gobierno no mostró razones suficientes para anular el derecho del peticionario a obtener el sobreseimiento de una causa suspendida después de ciento veinte días sin el consentimiento y contra la oposición del peticionario. La causa fué señalada tres veces para juicio y suspendida tres veces contra la oposición del peticionario. Para justificar la negativa al sobreseimiento debió haberse presentado una razón sustancial.

Debe expedirse el auto.

> *Con lugar la solicitud y ordenada la expedición de un auto de* mandamus *perentorio.*

Jueces concurrentes: Sres. Presidente Hernández y Asociados del Toro, Aldrey y Hutchison.