LUIS PADIAL QUIÑONES, recurrente y apelado, *v.* JUNTA DE RE-
TIRO DE FUNCIONARIOS Y EMPLEADOS PERMANENTES DEL GO-
BIERNO INSULAR DE PUERTO RICO, compuesta de MANUEL V.
DOMENECH, CHARLES H. TERRY, JOSÉ G. LÓPEZ, DR. E.
GARRIDO MORALES y PABLO L. SOSA, recurrida y apelante.

No. 6819.—*Sometido:* Junio 7, 1935. *Resuelto:* Junio 14, 1935.

*Hon. Procurador General Benjamin J. Horton* y *T. Torres Pérez, Sub-
procurador,* abogados de la apelante; *L. Tirado Géigel,* abogado
del apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO, emitió la opinión del
tribunal.

Luis Padial Quiñones presentó en la Corte de Distrito
de San Juan una solicitud de *mandamus* contra la Junta de
Retiro de Funcionarios y Empleados Permanentes del Go-

bierno Insular, alegando substancialmente que desde 1900 y en distintas fechas hasta marzo 31, 1933, desempeñó diversos empleos en el Gobierno Insular, habiendo servido como Inspector en el Departamento de Sanidad desde agosto 1923 hasta marzo 1933 en que tuvo efecto su renuncia presentada con motivo de incapacidad para el servicio por razón de enfermedad; que en enero 1933 pidió a la Junta demandada su retiro acompañando certificaciones médicas creditivas de su incapacidad física; que en abril 1933 la Junta negó su petición basándose en el informe del Dr. García Cabrera expresivo de que el peticionario padece de linfangitis en la pierna derecha y se queja de opresión cardíaca debida a cierta infección específica, lesiones que a su juicio no constituyen motivo de incapacidad total y permanente para el trabajo; que el peticionario pidió a la Junta que reconsiderara su acuerdo y la Junta se negó, y que solicitada de nuevo la reconsideración, la Junta lo requirió para que se sometiera a otro examen por el Dr. García Cabrera a lo que el peticionario accedió y practicado insistió en su negativa. El informe del segundo examen se transcribe. Fué general físico y parcial de la orina, la sangre y la caja torácica, llegando el doctor a las mismas conclusiones que en el primero: linfangitis de la pierna derecha, y queja de opresión cardíaca con palpitaciones originada por infección sifilítica, agregando que los ataques agudos de la linfangitis, ocasionales, imposibilitan temporalmente al paciente para el trabajo.

Bajo esas circunstancias, sosteniendo que de acuerdo con la sección 6 de la Ley No. 104 de 1925 (pág. 949), la Junta está obligada a reconocer el derecho al retiro que tiene el peticionario, solicitó la expedición del *mandamus*.

Un auto condicional fué librado. Excepcionó y contestó la Junta. Se llamó el caso para la vista, declarando en ella los Doctores Sifre, Sub-Comisionado de Sanidad, Domínguez, Jefe de Unidad de Salud Pública, y García Cabrera,.

médico de la Junta de Retiro, y el peticionario. La corte dictó finalmente su sentencia resolviendo el caso en pro del peticionario.

Apeló la Junta, celebrándose la vista del recurso el 3 de mayo último con asistencia e informe de los abogados de ambas partes. El alegato escrito del apelado, sin embargo, no se radicó hasta el 7 de junio actual.

En la relación del caso y opinión que sirve de base a la sentencia se dice, en parte, lo que sigue:

"Yendo ahora a los méritos del caso, la declaración de Ramón J. Sifre y de César Domínguez, quienes fueron los jefes superiores del peticionario mientras desempeñó en Humacao el cargo de inspector de sanidad en el distrito de Humacao, es terminante el hecho de que el postulante estaba físicamente incapacitado para rendir un servicio útil y eficiente a causa de una enfermedad crónica, al extremo de que según declaró el propio Dr. Sifre, si el postulante no hubiera solicitado su retiro, entonces él hubiera recomendado al Comisionado de Sanidad que lo pidiera él. El testimonio de estos dos médicos robustece el del peticionario. En cuanto a su estado de salud, el Dr. García Cabrera, que fué el médico que lo examinó a nombre de la junta querellada, ratificó su manifestación de que el postulante 'no está incapacitado total y permanentemente para el trabajo, pero sí sufre de ataques agudos de linfangitis que le incapacitan temporalmente.' Además encontró también que el postulante tiene una afección en su sistema cardio-vascular que no le permite hacer esfuerzos continuados. Estos son los hechos. Vamos al derecho.

"La Ley No. 104 de 1925 (pág. 271) (sic) establece el retiro de los funcionarios y empleados permanentes del Gobierno Insular de Puerto Rico; abarca y comprende a todos los empleados en el servicio civil clasificado o no clasificado, con la sola excepción de los jueces del Tribunal Supremo, catedráticos de la Universidad, maestros de escuela, miembros de la Policía Insular y empleados municipales. Está fuera de discusión que el empleado está incurso en la ley referida. Está fuera de discusión que el empleado está padeciendo de una linfangitis crónica con lesiones cardio-vasculares. Lo que tenemos que resolver es: 1.—Si estas lesiones incapacitan físicamente al peticionario de acuerdo con la sección 6 de la ley; y 2.—Si la junta recurrida tiene facultad discrecional alguna para conceder o negar la pensión.

"En cuanto al primer extremo, la sección 6 de la ley, en lo atinente al caso que resolvemos, dispone: (a) que todo funcionario o empleado que haya servido no menos de siete años al Gobierno Insular y que antes de tener derecho al retiro por razón de edad o voluntariamente (secciones 4 y 8 de la ley) quedare físicamente incapacitado *'para rendir un servicio útil y eficiente por causa de enfermedad o daño, siempre que tal enfermedad o daño no haya sido motivado por parte del funcionario o empleado, será retirado a su solicitud o a petición del jefe de su departamento u oficina, con una pensión que se computará de acuerdo con los preceptos de la sección 7 de la ley.'* Este es, en síntesis, el precepto que tenemos que interpretar. De suerte que si este peticionario fué empleado del Gobierno Insular, y antes de tener 55 años de edad y prestar 15 años de servicio, o antes de prestar 20 años de servicio, ha quedado incapacitado físicamente para rendir un servicio útil y eficiente por causa de una enfermedad que no ha sido motivada por hábitos viciosos, intemperancia o mala conducta, y así lo ha hecho manifiesto a la junta recurrida, ésta de acuerdo con la ley no tiene otra función que retirarlo concediendo la pensión de acuerdo con los preceptos de la ley. De las admisiones de la parte recurrida encontramos que el postulante presentó a la junta todo lo que podía presentar: certificaciones de médicos y de sus superiores; unas en cuanto a su estado de enfermedad, y otras en cuanto a su incapacidad. Se abroquela la junta en que los informes que le fueron rendidos por su médico no revelaban aquella incapacidad física, y que en uso de sus facultades no le obligaban a conceder la pensión. El Dr. García Cabrera en su primer informe manifiesta que las lesiones no constituyen en el postulante motivo de incapacidad total y permanente para el trabajo; en el segundo informe manifiesta que el postulante padece una linfangitis que le imposibilita temporalmente para el trabajo.

"Las tantas veces citada sección 6 de la ley de retiro, todo lo que pide es que el empleado quede físicamente incapacitado *para rendir un servicio útil y eficiente. La única autoridad para determinar si el servicio que presta un empleado es útil y eficiente, es el jefe de la oficina o departamento en que el empleado presta sus servicios. La Junta de Retiro no tiene facultad alguna ni discreción para determinar si los servicios de un empleado son útiles y eficientes. Si el empleado pone a la junta en condiciones de conocer su estado de salud y así mismo mediante certificaciones de sus superiores hace manifiesta la incapacidad para un servicio eficiente y útil, el deber de la junta es ministerial e imperativo, ya que dadas estas condiciones, el*

*empleado será retirado con una pensión de acuerdo con la ley.''* Las itálicas del último párrafo son nuestras.

Creemos que el criterio de la corte sentenciadora con respecto a las facultades de la Junta es erróneo.

La sección 6 de la Ley No. 104 de 1925, Leyes de 1925, p. 953, invocada por el peticionario prescribe que todo funcionario o empleado que quedare físicamente incapacitado para rendir un servicio útil y eficiente por causa de enfermedad o daño, tendrá derecho al retiro, siempre que la enfermedad o el daño no hubieren sido motivados por hábitos viciosos, intemperancia o mala conducta voluntaria, disponiendo además que no se concederá retiro a ningún funcionario o empleado sin ser examinado por un médico al servicio del Gobierno o por un médico o cirujano debidamente autorizado para ejercer su profesión o por una Junta de Médicos o Cirujanos designada al efecto por la Junta, debiendo el funcionario o empleado encontrarse inhabilitado físicamente en la medida y forma provistas.

La sección 11 de la propia ley dispone:

''Sección 11.—Las pensiones que se concedan de acuerdo con esta Ley, serán pagadas mensualmente el primer día laborable del mes siguiente al mes u otro período a que corresponda la pensión, y el pago de las pensiones y reembolsos se hará por cheques expedidos en la forma y con las garantías que sean prescritas por el Auditor de Puerto Rico. *La solicitud para retiro se hará en la forma que prescriba la Junta de Retiro,* y se dirigirá por el empleado al jefe del departamento u oficina donde hubiere prestado o estuviere prestando servicios, y dicho jefe la transmitirá a la Comisión del Servicio Civil Portorriqueño para que ésta expida el certificado del tiempo de servicios prestados por el solicitante. La Comisión de Servicio Civil devolverá la solicitud a la Junta de Retiro con todos los documentos creditivos de los servicios prestados por el solicitante, *y la junta resolverá si la pensión solicitada puede ser concedida y el montante de ella, de acuerdo con esta Ley.* Las pensiones deberán ser consideradas y resueltas de acuerdo con el número de orden de presentación que corresponda a cada una de ellas, según el registro que deberá llevar la junta; *Disponiéndose,* que cuando los fondos disponibles para pensiones no alcanzaren para atender a todas las solicitudes presen-

tadas, la Junta de Retiro podrá dar preferencia a aquellas solicitudes, que de acuerdo con las circunstancias y méritos de cada caso, *sean a ello acreedoras, tomando en consideración la inhabilidad física, edad y tiempo de servicios del solicitante.*

"Al aprobarse la pensión la junta lo notificará al jefe del departamento u oficina a que pertenezca o haya pertenecido el funcionario o empleado, al Auditor y al Tesorero de Puerto Rico, respectivamente, para los efectos del pago mensual del importe de la pensión concedida. Cuando se tratare de servicios prestados con anterioridad a la creación de la Comisión de Servicio Civil Portorriqueño, y ésta no pudiera certificar sobre los servicios prestados, la Junta de Retiro tendrá facultad para admitir cualquier prueba documental que se le someta por la parte interesada, y al ser aceptada dicha prueba, tendrá el mismo valor que el certificado de la Comisión del Servicio Civil mencionado en esta sección. *La Junta de Retiro podrá practicar las investigaciones que crea convenientes, y sus miembros tendrán facultad para tomar juramentos en relación con las disposiciones de esta Ley."* Itálicas nuestras.

Y esta corte, recientemente, en el caso de *Font* v. *Junta de Retiro,* 48 D.P.R. 24, 29, después de analizar nuestra propia jurisprudencia, dijo:

"Admite el peticionario que la junta antes de actuar debe satisfacerse a sí misma del estado de hechos que previene la ley. ¿Y cuál es el estado de hechos que debe producirse en este caso para que proceda la concesión del retiro? La ley lo dice claramente: la incapacidad física del empleado para rendir un servicio útil y eficiente por causa de su enfermedad. ¿Cómo puede la junta, sin ejercer alguna discreción en la apreciación de la prueba, formular su juicio sobre la existencia o inexistencia del hecho en aquellos casos en que los médicos difieran en cuanto a esta cuestión fundamental? La incapacidad, si existe, es un hecho que debe acreditarse. La misión de la junta no es establecer el hecho, sino reconocer su existencia cuando le ha sido acreditado, pero si no queda satisfecha de su existencia no puede quedar obligada a aceptarlo."

■■■ Prescindiendo de si el juicio de la corte de distrito debió formarse únicamente a base del examen de lo que estuvo ante la Junta para dictar las resoluciones de que se queja el peticionario, por no haber sido suscitada la cuestión, y fundándonos en el resultado de la evidencia practi-

cada por el peticionario ante la corte de distrito tal como lo resume el juez sentenciador en su relación del caso, que es adoptar la posición más favorable que puede adoptarse para con el peticionario, aún así creemos que no cabe concluir que la Junta procediera arbitrariamente o abusara de su discreción al apreciar la prueba o las circunstancias concurrentes. El *mandamus* debió en tal virtud declararse sin lugar.

Volvemos a referirnos a la opinión de esta corte en el caso de *Font* v. *Junta de Retiro,* supra, esta vez a aquella parte de la misma que dice:

"En cuanto a la precedencia del auto de *mandamus,* hemos declarado, interpretando la ley, que los tribunales superiores, al ejercer su propia y sana discreción en el uso de este recurso flexible, revisan y regulan hasta cierto punto la discreción de juntas y tribunales inferiores, aún en casos en que el deber es tal que necesariamente requiere el examen de evidencia y la decisión de cuestiones de derecho y de hecho. Muñoz v. Ramos, supra. La corte puede apreciar la evidencia sometida a la junta para apreciar si se ha cometido alguna arbitrariedad o se ha incurrido en un error tan manifiesto y palpable que esté justificada la expedición de un auto de *mandamus.* El ejercicio de la facultad discrecional no debe ser caprichoso, abusivo y arbitrario, porque allí donde intervienen estos elementos puede decirse que no se ha ejercido discreción. Si se incurre en un error de tal naturaleza que equivalga a una negación de la justicia, los tribunales estarán justificados en intervenir mediante este procedimiento extraordinario para corregir el error. Dyer v. Rossy, 23 D.P.R. 772. Hemos leído la solicitud en este caso. De la misma surge que fueron sometidos a la junta los informes de los Dres. Martínez Rivera y de Juan, designados por el peticionario, y de los Dres. Gutiérrez Igaravídez y Costa Mandry, designados por la referida Junta, amén del informe del Dr. García Cabrera, que se produjo algún tiempo después. Es verdad que se alega que la junta no concedió valor al dictamen de los Dres. Martínez Rivera y de Juan; pero esto, que parece más bien una conclusión que la alegación de un hecho, no puede interpretarse en el sentido de que la Junta dejó de considerar y apreciar el informe de los referidos médicos. No se alega que este organismo haya incurrido en error manifiesto ni que haya sido arbitrario en el ejercicio de su discreción. Por el contrario, se dice que la junta recurrida carece de facultad para determinar por sí misma, como lo ha hecho

en este caso, el hecho de la incapacidad física del peticionario, viniendo obligada a aceptar el dictamen médico ofrecido por éste procedente de facultativos al servicio del gobierno.

*Debe revocarse la sentencia recurrida y dictarse otra declarando sin lugar la petición, sin especial condenación de costas.*